IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | CHAPTER 13 |
| EARL WILSON, | : | |
| DEBTOR. | : | BANKRUPTCY NO. 14-12720-MDC |

# MEMORANDUM

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

## INTRODUCTION

On November 30, 2015, the City of Philadelphia (the "City") filed a Notice of Appeal seeking review of this Court's Order dated November 17, 2015(the "Order"), confirming the Debtor's Revised Fifth Amended Chapter 13 Plan dated November 9, 2015 (the "Revised Fifth Amended Plan"). This Memorandum is intended to be consistent with this Court's November 6, 2015, bench ruling and is submitted pursuant to Local Rule 8001-1(b)[1] to further expound upon the reasons for the ruling as well as this Court's subsequent entry of the Order.

Central to this Court's consideration was the attempt by Earl Wilson (the "Debtor") to redeem his interest in 4507 N.17th Street, Philadelphia, Pennsylvania (the "Property") through a Chapter 13 plan. The Debtor is the former owner of the Property having acquired it on October 29, 2008. On January 15, 2014, the Philadelphia Sheriff's Office conducted a tax sale (the "Tax Sale") to collect unpaid real estate taxes due on the Property. The winning bidder was Skyy Capital LLC ("Skyy") which purchased the Property for the price of $7,900.[2] On February 12, 2014, the Philadelphia Sheriff's Office signed and acknowledged a deed evidencing the transfer of the Property to Skyy.

---

[1] Local Rule 8001-1(b) provides: "Opinion in Support of Order. The bankruptcy judge whose order is the subject of an appeal may, within 14 days of the filing of the notice of appeal, file a written opinion in support of the order or a written supplemental opinion that amplifies any earlier written opinion or recorded oral bench ruling or opinion." L.B.R. 8001-1(b).

[2] Subsequent to the Debtor's filing for Bankruptcy relief and outside of the supervision of this Court, Skyy conveyed the Property to Jamal Hick and Sharon Hicks (collectively, the "Hicks"). The terms of this transaction have not been disclosed to this Court.

FACTUAL AND PROCEDURAL BACKGROUND

On April 7, 2014, the Debtor, acting *pro se*, filed a voluntary petition seeking Chapter 13 relief. As listed on his petition, the Debtor does not currently reside at the Property. Rather, the Debtor's current residence is located at 1306 Annin Street, Philadelphia, Pennsylvania. However, the Debtor did list on his Schedule A his alleged interest in the Property stating that he was its "owner" and that his interest in the Property was subject to a secured claim in the amount of $10,000. Despite having identified his alleged interest in the Property and the fact that said interest was subject to a $10,000 secured claim, the Debtor did not identify the holder of this security interest. Similarly, the Debtor's original Chapter 13 Plan dated April 7, 2014 (the "Original Plan") did not address the Property or otherwise provide for the payment to the holder of the unidentified secured claim.

The Debtor retained counsel and has filed amended schedules and five amended plans. In his Amended Schedule A dated September 10, 2014, the Debtor identified himself as the owner of the Annin Street property and, with regard to the Property, stated that he was the holder of a "Right to Redeem from Tax Sale." Amended Schedule A dated September 10, 2014. He assigned a valued of $25,000 to his interest in the Property and stated that his interest was subject to a secured claim in the amount of $7,900. In his Amended Schedule D, the Debtor elaborated upon the status of the Property by identifying Skyy as the holder of a claim in the amount of $7,900 that is secured by an alleged lien on the Property. In addition, the Debtor acknowledged that the amount due to Skyy related to the "Sums Due on Redemption."

On October 25, 2014, the Debtor filed a Proof of Claim on behalf of Skyy ("Claim No. 14-1") stating that Skyy was the holder of a claim in the amount of $3,000 that was secured by the Debtor's interest in the Property. In Claim No. 14-1, the Debtor did not provide an explanation of the basis of the alleged secured claim or how the alleged amount was calculated. Pursuant to the Revised Fifth Amended Plan, the Debtor will pay the full amount of Claim No. 14-1 plus interest at 10% per annum by paying a total amount of $4,500 over the five-year plan period. By paying this amount, the Debtor proposed to cause the redemption of the Property consistent with his rights under the Municipal Claims and Tax Lien

Act, 53 P.S. §7293 (the "MCTLA").  None of the documents filed with this Court provide an explanation

of how the proposed $3,000 redemption amount correlates to the $7,900 paid by Skyy at the Tax Sale.

Presumably, some portion of the purchase price was to be offset by rents collected by Skyy.[3]

After the Debtor filed his Fourth Amended Plan dated June 13, 2015 (the "Fourth Amended

Plan"), the City filed an Objection dated July 14, 2015, wherein the City raised five objections to this

Court's confirmation of the Fourth Amended Plan.  As understood by this Court, the City objected to

confirmation of the Fourth Amended Plan because (1) it did not comply with applicable law (*i.e.*, the

MCTLA); (2) the Plan did not comply with applicable law because the Debtor did not hold a right to

redeem as of the Petition Date; (3) the Plan did not comply with applicable law because it proposed to

reconvey the Property to the Debtor upon Plan confirmation; (4) the Plan was not feasible because of the

treatment of Skyy's claim; and (5) the Plan was not feasible because it did not provide for the payment of

2016 real estate taxes and other charges associated with the Debtor's proposed ownership of the Property.

On July 23, 2015, this Court held an initial evidentiary hearing to consider confirmation of the

Fourth Amended Plan.  At this hearing, the City and the Debtor appeared.  In addition, Rashon Jackson,

who admitted that he is not an attorney or otherwise licensed to practice law, appeared on behalf of Skyy.

Kendall Boone appeared in his capacity as the realtor who facilitated the sale of the Property from Skyy

to Jamal Hicks and Sharon Hicks.  Finally, Mr. Hicks appeared in his own behalf in the capacity as the

alleged present owner of the Property.[4]

Consistent with the Revised Fifth Amended Plan, the Fourth Amended Plan proposed to pay off

Skyy's allowed, secured claim in the amount of $3,000 to be paid a total of $4,500 over the plan period.

In support of confirmation, the Debtor was called to testify.  The Debtor testified that he resided at the

Property from 2010 to 2013 and that he does not presently live at the Property.  From this Court's

---

[3] Counsels for the Debtor and the City agreed that under the MCTLA the Debtor is entitled to a reduction in the redemption payment amount for rents collected by the buyer.

[4] At this hearing, Debtor's counsel stated that he served Jamal Hicks on June 15, 2015, at his address listed in City records. Jamal Hicks claimed that this service was ineffectual because he failed to collect the mail that had been delivered to this address. This Court rejected the argument and held that Jamal Hicks was properly served and was given adequate notice of the Debtor's proposed plan.  Audio recording of Hearing 7/23/2015 @ 2:15 p.m. (3:00:40-3:01:05) Bky. No. 14-12720MDC; Audio recording of Hearing 7/23/2015 @ 2:15 p.m. (3:42:45-3:43:05) Bky. No. 14-12720MDC ("I found that you were properly served here.").

understanding of the Debtor's testimony, it appeared that the Debtor was living in the Property at the time

of the Sheriff's Sale and that, as required by a state court order, he vacated the Property prior to the

Sheriff's Sale.  In addition, he testified that at the time of the tax sale, approximately $8,000 in real estate

taxes were owed to the City.  The Debtor further testified that at the time of the Sheriff Sale and up to the

date of the hearing, the Property was occupied by at least one tenant.  Finally, he testified that he intended

to use the rental income from the Property to fund his Fourth Amended Plan.

Other than the City's examination of the Debtor, it presented no evidence in support of its

opposition to confirmation.  With regard to the Debtor' right to redeem, the City argued that the Debtor

did not possess a right to redeem because, within the meaning of 52 P.S. §7293(c), the Property was

vacant as of the Sheriff's Sale.  In making this argument, the City acknowledged that at least one unit of

the Property was in fact occupied both prior and subsequent to the Sheriff Sale.  However, the City argued

that this Court should determine that the Property is technically vacant because the Property contains

multiple units and that at least one was unoccupied prior to the Sheriff Sale.  In support of its position, the

City identified a recent decision issued by the Philadelphia Court of Common Pleas.  At the time, the City

stated that the decision was unpublished and, despite its efforts to identify it, the City was unable to

identify a copy of the decision in any searchable legal directories.[5]  Based upon the Court's review of the

---

[5] That decision, later identified by the Court as *City of Philadelphia v. Gardiner*, Case No. 14101704, 2015 WL 3512312 (Pa. Com. Pl. May 5, 2015), appears to conclude that multi-family properties are "vacant" under the MCTLA if the entire building is not occupied.  In *Gardiner*, Common Pleas Judge Carpenter addressed whether a prior owner was precluded from redeeming her interest in real property because the property was vacant within the meaning of 53 P.S. §7293(c).  In his decision, Judge Carpenter explained that the prior owner failed "to provide evidence that the Property was redeemable as described by Section 7293(c)." *City of Philadelphia v. Gardiner*, Civ. No. 14101704, 2015 WL 3512312, *2 (Pa. Com. Pl. May 5, 2015).  In finding that the property was not redeemable, Judge Carpenter relied exclusively on §7293(c)'s exclusion of vacant properties. Elaborating on his reasons for determining that the property should be considered "vacant," Judge Carpenter wrote:

> Appellant Gardiner is in the business of investing in real estate to be used as rental property and it is undisputed that neither Gardiner nor his family were using the Property as a residence.  During the ninety (90) day time period prior to sale, Gardiner rented the Property - an investment duplex - to two different tenants, a Mr. Chandler and a Mr. Murray, who, separately and respectively, rented the second floor and first floor apartments.  Under Subsection (c), a property must be continuously occupied by the same individual or basic family unit as a residence and Gardiner has failed to satisfy this requirement.  Rather, Appellant's own evidence demonstrates that two separate tenants, and not one individual, had agreements to separately lease the two apartments that comprised the property.  These tenants were not of the same basic family unit, to each other or to Gardiner.  Furthermore, it is unclear whether Mr. Murray in particular ever resided in the property continuously for at least ninety (90) days prior to the date of the sale.  Accordingly, pursuant to the language of Subsection (c), the Property was properly deemed to be a vacant property, as it does not satisfy the clear requirements for classification as a non-vacant, redeemable property.

*City of Philadelphia v. Gardiner*, Civ. No. 14101704, 2015 WL 3512312, *2 (Pa. Com. Pl. May 5, 2015).

decisions by the Pennsylvania Commonwealth Court regarding the meaning of "vacant" under the

MCTLA, this Court determined, based upon the fact that at least one of the Property's units was occupied,

that the Property was not vacant within the meaning of the MCTLA and the Debtor therefore held, as of

the Petition Date, an unexpired right of redemption.

       At the close of the July 23rd hearing, this Court informed the parties that the only issue was

---

The Court's interpretation of the meaning of "vacant" appears to conflict with decisions of Pennsylvania appellate courts. First, the Court appears to rely on the status of the property as an investment property and not as an owner-occupied residence to find the right of redemption to be unavailable. The Court further appears to rely upon the property's multi-unit status and not a single "basic family unit" to reach the conclusion that the property was properly deemed vacant. In other words, the Court concluded that the drafters of the statute intended the term "vacant" to include properties that *are inhabited* by multiple families.

The result in *Gardiner* is peculiar when considered in light of other Pennsylvania decisions. *City of Philadelphia v. F.A. Realty Investors Corp.*, 95 A.3d 377 (Pa. Commwlth. Court. 2014) (holding that artificial entities may redeem a multi-unit property); *Lamm v. Fisher, et al.*, 903 A.2d 1259 (Pa. Super. 2006) (holding that owner may not redeem mixed-use property because residential portion was unoccupied). For instance, in *F.A. Realty*, the court addressed the right of three entities seeking to redeem pursuant to the MCTLA their collective interest in a multi-unit apartment building. Despite acknowledging that vacant properties may not be redeemed, the court did not concern itself with whether the property's status as a multi-unit building rendered it "vacant" within the meaning of §7293(c). Rather, the decision hinged on whether a party may exercise its right of redemption prior to the execution of the acknowledgment. Invoking "the purpose of sheriff's sales under the [MCTLA] is to collect delinquent taxes and not to strip property owners of their properties," the court found that the lower court's denial of the request to redeem as premature to be an "absurd result." *F.A. Realty.*, 95 A.3d at 386.

Significantly, the court addressed the issue of whether the parties may redeem a vacant property. However, the *F.A. Realty* court did not consider whether the property, due to its status as a non-owner-occupied, multi-unit property, rendered the property "vacant" within the meaning of the state. Rather, the court held that the language of §7293(c) applied only to an owner's right to redeem a property after the acknowledgement of the sheriff's deed. The court held that the limitation applied only after the acknowledgement of the sheriff's deed and therefore vacant properties may be redeemed in the period between a sheriff's sale and the acknowledgement of the sheriff's deed. *F.A. Realty*, 95 A.3d at 388-89 ("consistent with the Legislature's intent under section 32(c), redemption is allowed for vacant property before the sheriff's deed is acknowledged, but expressly not after." (emphasis in original). Accordingly, the court determined that the fact that the property was vacant, as a result of a state court order forcing the tenants to move out of the property, did not divest the owners from redeeming their interest in the period prior to the acknowledgement of the sheriff's deed. *Id.* at 389 ("the trial court misconstrued section 32(c)'s language to mean that vacant property is never redeemable."); *accord Brentwood Borough School Dist. v. HSBC Bank USA*, 111 A.3d 807, 809 (Pa. Commwlth. Ct. 2015) ("if HSBC wished to redeem this 'vacant property' it was required to do so before the Sheriff's Deed was acknowledged…").

The City's proffered interpretation of "vacant" to include multi-unit residences that are occupied is further undermined by reference to the Commonwealth Court's decision in *Brentwood*. In this case, the court addressed whether the fact that a tenant used a unit to store her furniture was sufficient to prevent the property from being classified as "vacant" within the meaning of §7923(c). In formulating the test for determining whether a property is occupied, the court stated:

> Whether a property was "continuously occupied by the same individual or basic family unit as a residence" is a factual determination which must be made on a case-by-case basis, considering factors, such as: *whether anyone was habitually physically present at the property*, *i.e.*, regularly sleeping and eating there and using it as a place to dwell; whether any lack of physical presence was due to temporary illness, travel or renovation; whether the property was unsecured, damaged or uninhabitable; and whether the basic and necessary utilities such as water, electric and gas were operational.

*Brentwood Borough School Dist.*, 111 A.3d at 813 (emphasis added).

The limitation the City now asks this Court to read into the MCTLA is conspicuously absent from the court's considerations of whether the property is "owner-occupied." The court in *Brentwood* specifically referenced whether "anyone" resides at the property. Contrary to the City's proffered interpretation, the Court did not include any reference to a requirement that a property consist of a single-unit, owner-occupied property. Because the City's proffered interpretation of "vacant" goes against its commonly understood meaning as well as the majority of case law addressing the term, this Court rejected the City's attempt to read vacant to exclude occupied, multi-unit properties.

whether the Proof of Claim filed by the Debtor is binding upon Jamal Hicks, the present owner of the

Property and, specifically, whether the Proof of Claim is determinative as to the amount that must be paid

to redeem the Property.  Audio recording of Hearing 7/23/2015 @ 2:15 p.m. (3:44:58-3:41:50) Bky. No.

14-12720MDC.  Having identified this issue, this Court instructed the parties to brief this issue.  This

Court set August 21, 2015 as the deadline for submitting briefs.  After both the City and the Debtor filed

briefs addressing the issue, this Court scheduled a confirmation hearing for September 21, 2015, to

conclude its consideration of the Fourth Amended Plan.  On the day before this scheduled hearing, the

Debtor filed the Fifth Amended Chapter 13 Plan dated September 20, 2015 [Docket No. 110] (the "Fifth

Amended Plan").  As a result, this Court suspended its consideration of the Fourth Amended Plan.  In

addition and to avoid the issues associated with the Fourth Amended Plan, this Court entered an Order

dated October 16, 2015, wherein this Court recognized that the filing of the Fifth Amended Plan rendered

moot its consideration of the Debtor's Fourth Amended Plan and notified all parties in interest that it

would deem Skyy and Hicks to have accepted the Fifth Amended Plan, for purposes of §1325(a)(5)(A), if

they failed either (1) to file written objections to the Fifth Amended Plan prior to November 6, 2015, or

(2) to appear at a confirmation hearing to be held on November 6, 2015 (the "Confirmation Hearing").

On November 6, 2015, this Court held a confirmation hearing (the "Confirmation Hearing") to

address the Fifth Amended Plan filed by the Debtor.  Skyy and Hicks did not file an objection or

otherwise appear at the Confirmation Hearing and as a result were deemed to have accepted the accepted

the Fifth Amended Plan, for purposes of §1325(a)(5)(A).  The only remaining issue before this Court was

the Objection dated October 7, 2015 (the "City's Objection"), filed by the City.  In the City's Objection,

the City argued that the Fifth Amended Plan was unconfirmable for two reasons.[6]  First, the City argued

that the Fifth Amended Plan contained impermissible language that purports to cause the waiver of all of

the City's unfiled claims.  Second, the City argued that the Fifth Amended Plan was proposed in bad faith

because (1) the Fifth Amended Plan requires the transfer of the title to the Property upon plan

confirmation; and (2) the Debtor's attempt to redeem the property by paying the Redemption Amount

---

[6] The City's Objection also incorporated by reference its objections to the Fourth Amended Plan. City's Objection, ¶5.

over the plan period is inconsistent with applicable state law.

<u>LEGAL DISCUSSION</u>

At the Hearing, this City pressed three of its objections: (1) the Fifth Amended Plan's treatment of the City's unfiled claims; (2) the Fifth Amended Plan's requirement that title to the Property be conveyed to the Debtor upon confirmation and not upon completion of the payment of the redemption amount; and (3) the Debtor's right to stretch out the payment of the redemption amount.  With regard to the first two, this Court sustained the City's Objection.  Consistent with this Court's prior published opinions,[7] this Court denied the City's Objection to the extent it challenged the Debtor's right to stretch out the repayment of the Redemption Amount over the plan period.

**Objectionable Language, §1322(a)(2)**

In relevant part, the City objected to the following language that appears in ¶E of the Fifth Amended Plan:

> All claims of any kind by this creditor shall be allowed only in the amount that proofs of claim are filed and are ultimately allowed.  Any other potential claims of the City which are not filed by the Government Bar Date of October 4, 2014, are deemed to be waived and merged into the claims filed.  To date, the City has filed three claims totaling $2741.42, so that is all that it will be paid.

Fifth Amended Plan, ¶E.

In the City's Objection, the City contended that this Court determined at a hearing held on July 23, 2014, that this language is impermissible.  From this Court's review of the record, this Court did not hold a hearing in this bankruptcy case on that date.  In addition, this Court could not confirm that it had ever ruled on this issue.  To the contrary, it appears that at prior hearings the City specifically stated that it was not objecting to the treatment of its claims.  Audio recording of Hearing 7/23/2015 @ 12:05 p.m. (12:23:30-12:24:15) Bky. No. 14-12720MDC ("We are not objecting to the Debtor's treatment of our claim.").  Once this Court informed this City that, in this Court's opinion, it had not ruled on this issue, this Court turned to the merits of the City's position.

---

[7] *See, e.g., In re Tyndale*, 534 B.R. 272 (Bankr. E.D. Pa. 2015) (determining that the City lacked standing to object to plan provisions providing for redemption amount to be stretched out over the plan period).

The City did not cite any specific authority in support of its objection to this language.  Rather, the City cited the Third Circuit's decision in *In re Mansaray-Ruffin*, 530 F.3d 230 (3d Cir. 2008). *Mansaray* stands for the general proposition that a debtor may not modify a secured creditor's lien through the plan confirmation process.  *Id.*at 237) ("the Rules permit lien invalidation to occur only through litigation in an adversary proceeding-and not through a provision in a plan").  In addition, the City alleged that it holds certain claims that are within the scope of §523(a)(1) and therefore, the Fifth Amended Plan, to the extent it suggests the City's unfiled claims were waived, conflicts with applicable Bankruptcy law.[8]  In response, the Debtor argued that, while the language was ambiguous, it was not his intent to discharge the City's unfiled claims.

On the Debtor's Original Schedule E dated April 7, 2014, the Debtor identified the City as the holder of thirteen separate unsecured priority claims in the total dollar amount of $14,073.59. Subsequently, the Debtor filed an Amended Schedule E dated September 22, 2104, that omitted any reference to the previously identified unsecured priority claims allegedly held by the City.  However, the Debtor also filed an Amended Schedule D that identified the City as the holder of a secured claim in the amount of $10,000 arising from a water lien secured by the Debtor's interest in 1306 Annin Street, Philadelphia, Pennsylvania.  In contrast, the City has only filed three proofs of claim in the total amount of $2,741.41: (1) Claim No. 6-1 in the amount of $101.49; (2) Claim No. 10-1 in the amount of $2,439.92; and (3) Claim No. 11-1 in the amount of $200.00.  Accordingly, it did appear that the City's unfiled tax claims are among the kind of taxes included in §507(a)(8) that are exempted from discharge pursuant to §523(a)(1).

Accordingly, to the extent that the Fifth Amended Plan may be read to provide for the discharge

---

[8] Section 523(a)(1) is a self-effectuating provision that automatically exempts a debt from discharge.  *In re Otero*, Bky. No. 10-36858, 2011 WL 3207552, *3 n.1 (Bankr. N.D. Oh. Jul. 27, 2011).  As observed by Judge Frank,

> Because a proceeding to determine the dischargeability of a debt under §523(a)(1) is not subject to Rule 4007(c)'s sixty (60) day deadline, such a proceeding may be initiated while the bankruptcy case remains open or after the bankruptcy case has been closed.  If the dischargeability issue is not raised during the bankruptcy case, it may be determined in a state court or other non-bankruptcy forum in an action the debtor or creditor initiates after the automatic stay has terminated.  Non-bankruptcy fora are said to have "concurrent jurisdiction" to determine the dischargeability of debts in proceedings that are not subject to Rule 4007(c).

*In re Bryen*, 422 B.R. 503, 507 n.6 (Bankr. E.D. Pa. 2010).

8

of a §523(a)(1) claim, this Court determined that Fifth Amended Plan would not comply "with the

provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. §1325(a)(1).

To resolve this ambiguity, this Court ordered the Debtor to revise the Fifth Amended Plan to remove the

objectionable language. Consistent with this Court's instruction, the Debtor's revised plan removed any

reference to the City's unfiled claims. As approved by this Court, the Revised Fifth Amended Plan now

provides: "Class Five: To date, the City has filed three claims totaling $2,741.42, so that is all that it will

be paid for these claims." Revised Fifth Amended Plan, ¶E.

**Transfer of Title**

Next, this Court addressed the provisions of the Fifth Amended Plan that called for title to the

property to be conveyed to the Debtor upon plan confirmation. In relevant part, the Fifth Amended Plan

provided:

> Class Four: The claim of Skyy Capital, LLC or its assignee (Sky") secured by any lien
> allowed to this creditor upon the Debtor's redemption of the former residential property
> of the Debtor at 4507 North 17th St., Philadelphia, PA 19140 ("the 17th St. Property"),
> which was sold at a tax sale to Sky in January, 2014. The redemption shall be effective
> *at the time of confirmation of the Plan*, and Sky shall be obliged to deed the 17th St.
> Property back to the Debtor *at this time*…

Fifth Amended Plan, ¶D (emphasis added).

While this Court has held that Bankruptcy Code permits the payment of the redemption amount

to be stretched out over the plan period, this Court has not addressed the effect of stretching out the

payment of the redemption amount upon a debtor's right to regain title to the underlying property.

Consistent with this Court's prior rulings made in connection with its review of the Fourth Amended

Plan, this Court determined that title transfer will not occur until the Debtor pays the full redemption

amount, as provided by governing state law, and not, as provided by the Fourth Amended Plan, as of the

confirmation date. Audio recording of Hearing 7/23/2015 @ 2:15 p.m. (3:06:00-3:06:25) Bky. No. 14-

12720MDC. Accordingly, this Court instructed the Debtor to revise the Fifth Amended Plan to replace

the language requiring the conveyance of title to the Property upon Plan Confirmation with language

requiring the conveyance of title to the Property upon the full payment of the Redemption Amount. As

9

approved by this Court, the Revised Fifth Amended Plan now provides, in relevant part:

> The redemption shall be effective upon the payment of the Redemption Amount, as defined in this paragraph. Sky shall be obliged to deed the 17th St. Property back to the Debtor *at that time*.

Revised Fifth Amended Plan, ¶E (emphasis added).

**Impermissible Modification of Debtor's Right of Redemption**

This Court has determined that a debtor holding, as of the filing for Bankruptcy relief, an unexpired right of redemption may exercise that right by paying the redemption amount over the course of a debtor's Chapter 13 plan. *See, e.g., In re Minor*, 531 B.R. 564 (Bankr. E.D. Pa. 2015); *In re Terry*, 505 B.R. 660 (Bankr. E.D. Pa. 2014). As elaborated by this Court's at the July 23rd hearing on the Fourth Amended Plan, this Court identified the issue of whether the Debtor held an unexpired right to redeem as the determinative issue. Unlike the cases of *Terry* and *Minor*, the parties contested whether the Debtor held a right to redeem the Property due to the City's argument that the Property should be classified as "vacant" within the meaning of §7293(c). As discussed above, the fact that the Property was occupied by some person other than the owner or that the Property consists of multiple units does not mandate the conclusion that the Property be classified as vacant. Accordingly, this Court determined that the Debtor held an unexpired right of redemption that may be exercised by the payment of the Redemption Amount over the Plan Period.

**CONCLUSION**

After reviewing the Revised Fifth Amended Plan to ensure that it complied with this Court's instructions, this Court entered its Order confirming the proposed plan.

BY THE COURT:

*Magdeline D. Coleman*

———————————————————
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

Dated: December 14, 2015

David A. Scholl, Esquire
Law Office of David A. Scholl
512 Hoffman Street
Philadelphia, PA  19148

William C. Miller, Esquire
Chapter 13 Trustee
1234 Market Street, Suite 1813
Philadelphia, PA  19107

United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA  19107

Skyy Capital, LLC
c/o Mr. Rahsaan Jackson
4223 North Sydenham Street
Philadelphia, PA  19141

Jamal and Sharon Hicks
4507 North 17th Street
Philadelphia, PA  19140

Megan N. Harper, Esquire
Assistant City Solicitor, City of Philadelphia
Municipal Services Building, 5th Floor
1401 John F. Kennedy Boulevard
Philadelphia, PA  19102-1595

Bank of America, N.A.
c/o Jerome Blank, Esquire
Phelan Hallinan, L.L.P.
1617 John F. Kennedy Boulevard, Suite 1400
Philadelphia, PA  19103

Mr. Thomas LaBate
LaBate Auto Sales, Inc.
5800 East Roosevelt Boulevard
Philadelphia, PA  19149